## CALLAHAN *versus* THE STATE.

1. *Semble*—The Statute of 1820, providing for the reservation of novel and difficult questions, in criminal cases, was intended to exclude misdemeanors.

2. Cases of a civil nature, between the State and an individual, are removable of right, into the Supreme Court, by writ of error.

3. The judgment of a Circuit Court, in dismissing a Clerk from office, may be inquired into, on writ of error.

4. Such proceeding may be properly prosecuted in the name of the State.

5. A Circuit Court, under the act of 1819, cannot legally dismiss a Clerk of such court from office, unless charges be exhibited against him, and the facts be found by a jury.

In this case Callahan, having been the Clerk of the Circuit Court of Pickens county, was dismissed from office, by the presiding Judge of that court, under the authority of the act of 1819: and took a writ of error to reverse the decision. A motion was here made to dismiss the writ of error, on the ground that the plaintiff was not entitled to the writ in a case like the present. The Court overruled this motion and reversed the cause, on grounds which are shown in the opinion.

TAYLOR, J.—In this case a motion has been made to dismiss the writ of error, which it is necessary to dispose of before examining the merits.

It is contended in support of this motion, that the State is not properly made a party; that the contest is altogether between the plaintiff in error and present incumbent of the office, who was appointed by the Judge of the Circuit court, after the removal of the plaintiff; and that the remedy for the plaintiff, if he has been aggrieved, is by an information in the nature of a *quo warranto*.

To this it has been correctly replied, that no proceeding could be had against the present incumbent, while the judgment which vacated the office, by dismissing the plaintiff, remained in force: that it is necessary to reverse that judgment before the plaintiff could contest the right of another.     The judgment of the Circuit court was on a matter of controversy between the State and the plaintiff in error; when it was first instituted it was either with no party but the defendant, or the State constituted the plaintiff; and I do not see how it can be controverted that the latter was the case.—— The third section of the act of 1819, entitled "an act specifying the causes and manner of removing clerks," declares, "that all charges against clerks for misbehavior in office, shall be exhibited to court in writing, and the court shall direct the facts to be tried by a jury, and on conviction thereof, such clerk shall be fined or removed from office, as the court of which he is clerk shall think proper." By whom are the charges to be exhibited? Certainly by the State, through her prosecuting officers. It is for the public interest that such officers as clerks should discharge their duties correctly, and, although the citizen is often injured through their misfeasances and nonfeasances, yet the appointing power, whose confidence has been abused, is viewed as the injured party. When the office is vacated by the removal of the incumbent, it reverts back to the State, and is again to be filled by her. For these reasons the State was correctly viewed by the defendant as a party to the proceedings.

It is unnecessary to go into a minute examination of the cases in which a writ of error may be sued out as a matter of right in this State. In England it would seem the subject has a right to it in all prose-

cutions for misdemeanors.   Chief Justice De Gray,
*3Wils283 in Crosby's* case, said, "in all cases except treason
and felony, I think a writ of error is grantable by
right:" and our general assembly of 1820, when mak-
ing the provision which authorises the Judges of the
Circuit court, to reserve questions which are "novel
and difficult," may have entertained a similar idea,
when they confined the Circuit courts, in the exercise
of this power, to "criminal cases;" which term would
seem to exclude misdemeanors.

But it has been uniformly held by this court, that
cases of a civil nature, between the State and an indi-
vidual, such as suits upon recognizances, &c., are
properly removeable into this court, by writ of error,
and this would seem to come more nearly within that
class, than either the class of crimes or misdemeanors;
and unless this court takes jurisdiction of the case in
this way, it is difficult to tell how it is to be brought
before us; and surely the Circuit court has no power
to remove an officer who has been regularly elected
by the people, without there being some mode known
to the law, by which the judgment can be re-examined.

If this case cannot be removed into this court by
writ of error, I should very much question, wheth-
er it could be got here at all.    It is not questioned
but the Circuit court had jurisdiction of the subject
matter.   That is a court of record of general juris-
diction, and the only one in which cases of this kind
can be tried.   We believe the writ of error to have
been the right of the plaintiff in error in this case.

We come now to examine, whether there is error
in the judgment.

It appears, that, for several causes, which are re-
cited in the record, the Judge proceeded to remove

the clerk, without giving him a jury trial—and, in-deed, without any charge having been exhibited against him.   The third section of the act of 1819, "specifying the causes and manner of removing clerks," expressly requires, that "charges shall be exhibited," and that the "facts shall be tried by a ju-ry."   The judgment of the Circuit court is preceded by the recital of several acts of contumacy, which the plaintiff in error, is alleged to have committed; but, it does not appear how these acts were proved to the court.   It is argued, that we must presume, they were done and said—for, many of them consist of declarations, which he is stated to have made, in the presence of the court; and, if so, as a jury would, under the statute, only have been authorised to de-termine the fact of guilt or innocence, for the infor-mation of the court, and the punishment would have rested with the latter, the facts were self-evident, and the court could proceed to punish.

There are, however, several objections to this rea-soning.   In the first place, it is not stated, in the re-cord, that the acts were committed in the view of the court; and, it is not contradicting the record, to sup-pose they were not.   It would be carrying the doc-trine of presumption beyond all precedent, to deter-mine that we would presume this was the case, be-cause the court must be supposed to have done right, until the contrary appears.   Here, the contrary does appear—for, we must suppose, it would have been stated in the record, that the acts charged were com-mitted in the view of the court, if the fact had been so.

But, if this had expressly appeared, there would still have been error, as the statute leaves no alterna-

tive, but positively requires, that charges shall be exhibited, and the facts shall be found by a jury. A heavy penalty was inflicted upon the plaintiff in error, by the judgment of the court; before this could be done, he had a constitutional, as well as a statutary right to the verdict of a jury of his peers. The judgment is, therefore, reversed.